# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black;">

*People v. Heitmann*, 2017 IL App (3d) 160527

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH LANE HEITMANN, Defendant-Appellant (The Department of State Police, Intervenor-Appellee). |
| District & No. | Third District<br>Docket No. 3-16-0527 |
| Filed | October 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Bureau County, No. 15-MR-47; the Hon. Cornelius J. Hollerich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James R. Angel, of May, May, Angel & Harris, of Princeton, for appellant.<br><br>Geno J. Caffarini, State's Attorney, of Princeton, for the People.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Katelin B. Buell, Assistant Attorney General, of counsel), for intervenor-appellee Illinois Department of State Police. |

Panel                          JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices McDade and Wright concurred in the judgment and opinion.

## OPINION

¶ 1        Joseph Lane Heitmann (petitioner) appeals the dismissal of his petition for judicial review of the denial of his firearm owner's identification (FOID) card, arguing the court erred in (1) concluding that granting petitioner a FOID card was contrary to federal law and the Firearms Owners Identification Card Act (FOID Card Act) (430 ILCS 65/10 (West 2014)) and (2) dismissing his as-applied constitutional challenge. We affirm.

¶ 2                                          FACTS

¶ 3        In 1990, petitioner pleaded guilty to battery for grabbing the arm of his then-wife, dumping beer on her, and throwing two lit cigarettes at her. He was sentenced to a $150 fine. After the conviction, petitioner continued to possess a FOID card. In early 2014, petitioner applied for an Illinois concealed carry permit. In April 2014, he received a letter from the Department of State Police (ISP) denying his application based on its determination that petitioner was no longer eligible to possess a FOID card as his battery conviction was a crime of domestic violence. He then received another letter from the ISP revoking his FOID card.

¶ 4        In June 2015, petitioner filed a petition in the circuit court asking for relief from the revocation of his FOID card. The petition alleged that his battery conviction was not a crime of domestic violence, he had not been convicted of a forcible felony for 20 years, he was not likely to act in a manner dangerous to public safety, and granting relief would not be contrary to the public interest or to federal law. A hearing was held on the petition, and the State did not object. The record does not contain a transcript of the hearing. After the hearing in August 2015, the court ordered the ISP to reinstate petitioner's FOID card, finding that petitioner's battery conviction was not a crime of domestic violence for purposes of federal law, petitioner met all the requirements to possess a FOID card, he was not convicted of any other crimes that would disqualify him from possessing a FOID card, and he did not pose a danger to himself or others.

¶ 5        In September 2015, the ISP filed a petition to intervene. The court granted the petition. The ISP then filed a petition for relief from judgment. The court granted the petition and vacated its order reinstating petitioner's FOID card. The ISP then filed a motion to dismiss petitioner's petition, which is the subject of this appeal. In its motion to dismiss, the ISP alleged that petitioner's battery conviction was a crime of domestic violence under federal law and, therefore, granting petitioner's petition would be contrary to federal law under the FOID Card Act. 430 ILCS 65/10(c) (West 2014). Further, the ISP argued that under the 2013 amendments to the FOID Card Act, courts may no longer grant such a petition if doing so would be contrary to federal law. Petitioner's response argued that the FOID Card Act was unconstitutional as applied, courts have the ability to remove the firearm disability, and that his battery conviction should not be considered a crime of domestic violence. After a hearing, the court granted the ISP's motion to dismiss.

ANALYSIS

On appeal, petitioner argues that granting him a FOID card is not contrary to federal law, and the FOID Card Act is unconstitutional as applied to him because it amounts to a perpetual firearm ban. We find that (1) circuit courts may no longer remove the federal ban on firearm ownership by those convicted of domestic battery, (2) gun rights do not fall under the rights covered by the civil rights restored language of the federal Gun Control Act of 1968 (Gun Control Act) (18 U.S.C. § 921(a)(33)(B)(ii) (2012)), (3) even if gun rights were civil rights, Illinois does not provide a mechanism for restoration of such rights, and (4) the "safety valve" provision of the Gun Control Act provides no remedy to petitioner. Therefore, we find that granting petitioner a FOID card is contrary to federal law. Moreover, we find that petitioner's as-applied challenge is premature as petitioner has not yet availed himself of every remedy available to him. Specifically, petitioner may still apply for a pardon.

## I. Contrary to Federal Law

### A. The FOID Card Act

Under the FOID Card Act, the ISP may deny an application for a FOID card or revoke a FOID card if the applicant has been convicted of domestic battery. 430 ILCS 65/8(*l*) (West 2014). For the conviction to be considered a domestic battery, it is not necessary for the domestic relationship to be an element of the offense charged. *Id.* Instead, any conviction for battery against a spouse or child is considered a domestic battery for purposes of the FOID Card Act. *Id.*; *United States v. Castleman*, 572 U.S. ___, ___, 134 S. Ct. 1405, 1414-15 (2014); *United States v. Hayes*, 555 U.S. 415, 421 (2009).

Under section 10 of the FOID Card Act, once an applicant's FOID card application is denied or revoked, the applicant may petition the circuit court for a hearing. 430 ILCS 65/10(a) (West 2014). In 2012, the FOID Card Act provided that:

> "At least 30 days before any hearing in the circuit court, the petitioner shall serve the relevant State's Attorney with a copy of the petition. The State's Attorney may object to the petition and present evidence. At the hearing the court shall determine whether substantial justice has been done. Should the court determine that substantial justice has not been done, the court shall issue an order directing the Department of State Police to issue a Card." 430 ILCS 65/10(b) (West 2010).

The FOID Card Act further provided that the

> "court may grant such relief if it is established by the applicant to the court's or Director's satisfaction that:
>
>> (0.05) when in the circuit court, the State's Attorney has been served with a written copy of the petition at least 30 days before any such hearing in the circuit court and at the hearing the State's Attorney was afforded an opportunity to present evidence and object to the petition;
>>
>> (1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a [FOID] Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety; and

(3) granting relief would not be contrary to the public interest." 430 ILCS 65/10(c) (West 2010).

Under the 2012 version of the FOID Card Act, our supreme court in *Coram v. State of Illinois*, 2013 IL 113867, ¶¶ 70-74, determined that a circuit court could grant a petitioner relief under the FOID Card Act without preemption by federal law.

¶ 12 However, the FOID Card Act was amended in 2013. To the end of section 10(b), the amendments added, "However, the court shall not issue the order if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law." 430 ILCS 65/10(b) (West 2014). Further, the amendments added a fourth subsection to section 10(c), allowing the court to grant relief if, "granting relief would not be contrary to federal law." 430 ILCS 65/10(c)(4) (West 2014).

¶ 13 At the time *Coram* was decided, the 2013 amendments had just been effectuated. *Coram*, 2013 IL 113867, ¶ 75. Though not applicable to the case, the three-justice *Coram* majority stated:

"We note, in passing, the recent amendment of section 10 of the FOID Card Act *** , providing that a circuit court may not order issuance of a FOID card if the petitioner is otherwise prohibited from possessing or using a firearm under federal law, and that relief can be granted under subsection (c) only if 'granting relief would not be contrary to federal law.' [Citation.] Obviously, the current version of the statute was not in effect when proceedings under section 10(c) were conducted with respect to Coram. However, given our construction of the statute, and our interpretation of its effect, it would not matter if the amendments had been in effect. Relief granted pursuant to statutory review *removes* the federal firearm disability." (Emphasis in original.) *Id.*

¶ 14 However, two justices specially concurred and two justices dissented. *Id.* ¶¶ 79, 109-10, 137. The specially concurring and dissenting justices all believed that the 2013 amendments to the FOID Card Act would change the outcome and would preclude a circuit court from granting relief. See *id.* ¶ 101 (Burke, J. specially concurring, joined by Freeman, J.) ("The amendments make clear that a circuit court no longer has the authority to make findings or grant relief under section 10 if the court concludes that the applicant would be in violation of federal law if he or she were to possess a firearm."); see also *id.* ¶ 124 (Theis, J. dissenting, joined by Garman, J.) ("[U]nder the amended statute, the relief procedures under section 10 cannot remove a federal firearms disability."). Therefore, a majority of the justices on the supreme court found that under the 2013 amendments to the FOID Card Act, a circuit court does not have the authority to issue a FOID card if the applicant, under federal law, cannot possess a firearm. Stated another way, under the amended FOID Card Act, a circuit court cannot use section 10 to remove the federal firearm disability.

¶ 15 Following the specially concurring and dissenting justices, multiple districts in our appellate court have found that the circuit court is prohibited from granting relief " 'when such revocation is based on the petitioner being barred from obtaining, possessing, or using a firearm under federal law.' " *Baumgartner v. Greene County State's Attorney's Office*, 2016 IL App (4th) 150035, ¶ 29 (quoting *Walton v. Illinois State Police*, 2015 IL App (4th) 141055,

¶ 23); see also *Odle v. Department of State Police*, 2015 IL App (5th) 140274, ¶ 33; *People v. Frederick*, 2015 IL App (2d) 140540, ¶ 28; *O'Neill v. Director of the Illinois Department of State Police*, 2015 IL App (3d) 140011, ¶ 31.

¶ 16    Petitioner argues that "those courts and justices who believe the 2013 amendments prohibit the courts from granting relief too narrowly read the words 'otherwise prohibited by *** federal law' and 'contrary to federal law' to mean only whether one was convicted of a disqualifying offense as provided by federal law, and do not read these terms to mean the entire reach of federal law under the Gun Control Act to include 'safety valve' provisions under section 925 of the [Gun Control Act] or the 'civil rights restored' under section § 921(a)(33(B)(ii) of the [Gun Control Act]." Petitioner argues that "Congress has clearly not foreclosed states from granting relief, and as such, a state granting relief under the FOID statute is not acting contrary to federal law." Essentially, petitioner argues that by Congress merely providing any potential avenue for relief, the courts in Illinois can grant relief under the FOID Card Act without it being contrary to federal law, whether or not such avenue actually applies to petitioner. We disagree. In order to remove the federal firearm disability, one of the federal avenues of relief would have to actually apply in Illinois, which, as we set out below, they do not. *Infra* ¶¶ 18-34.

¶ 17                              B. Civil Rights Restored

¶ 18    Under the Gun Control Act, it is unlawful for anyone "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm. 18 U.S.C. § 922(g)(9) (2012). Like under the FOID Card Act, the domestic relationship need not be an element of the offense the petitioner is convicted of. See *Castleman*, 572 U.S. at ___, 134 S. Ct. at 1414-15; *Hayes*, 555 U.S. at 421. For example, a conviction of simple battery where the victim is the petitioner's spouse or child is considered a crime of domestic violence. See *Castleman*, 572 U.S. at ___, 134 S. Ct. at 1414-15; *Hayes*, 555 U.S. at 421.

¶ 19    However, the Gun Control Act also states:

"A person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(33)(B)(ii) (2012).

¶ 20    Petitioner contends that under this provision, granting him relief would not be contrary to federal law under the FOID Card Act. Specifically, petitioner argues that the circuit court granting him his FOID card amounts to "civil rights restored" as his right to own a gun is a civil right. We disagree.

¶ 21    In *Logan v. United States*, 552 U.S. 23 (2007), the Supreme Court construed "civil rights restored" language elsewhere in the Gun Control Act and "noted that although the term 'civil rights' was not defined in the Gun Control Act, 'courts have held *** that the civil rights relevant under the *** provision are the rights to vote, hold office, and serve on a jury.' " *Baumgartner*, 2016 IL App (4th) 150035, ¶ 37 (quoting *Logan*, 552 U.S. at 28). Based on *Logan*, the Fourth District of our appellate court has determined that "the rights restored under section 10 of the FOID [Card] Act are not necessarily the type of 'civil rights' referred to in

[the Gun Control Act]." *Connour v. Grau*, 2015 IL App (4th) 130746, ¶ 24. We agree with *Logan* and *Connour* that gun rights were not included in the rights contemplated in the Gun Control Act.

¶ 22   In coming to this conclusion, we reject petitioner's reliance on the New Hampshire case of *DuPont v. Nashua Police Department*, 113 A.3d 239 (N.H. 2015), for the proposition that gun rights are civil rights. Though the court in *DuPont* did find that gun rights are civil rights, we agree, as stated above (*supra* ¶ 21), with our Fourth District's interpretation of *Logan* that "the rights restored under section 10 of the FOID [Card] Act are not necessarily the type of 'civil rights' referred to in [the Gun Control Act]." *Connour*, 2015 IL App (4th) 130746, ¶ 24.

¶ 23   Even if we were to agree with petitioner that gun rights should be considered under the purview of the Gun Control Act's civil rights restored, Illinois does not provide a framework for the restoration of such a right.

¶ 24   The restoration of rights exemption "refer[s] only to restorations of civil rights by the convicting jurisdiction." *Beecham v. United States*, 511 U.S. 368, 372 (1994). Therefore, in order for petitioner's civil rights to be restored, Illinois law would have to allow for the restoration of such a right. For example, in *DuPont*, the court, after finding that gun rights were civil rights, turned to the question of whether or not the petitioner had had such a right restored. See *DuPont*, 113 A.3d at 249. The court determined that the petitioner had in fact had his gun rights restored by a special provision under Massachusetts's law.[1] *Id.* Petitioner argues that section 10 of the FOID Card Act provides such a framework for restoration of gun rights.

¶ 25   As stated above (*supra* ¶¶ 11-12), in order for the circuit court to reinstate an applicant's FOID card, the court must make a series of findings, including that granting relief would not be contrary to federal law. 430 ILCS 65/10(c) (West 2014). Under the Gun Control Act, a person who committed a crime of domestic violence may not possess a gun. 18 U.S.C. § 922(g)(9) (2012). However, an applicant is not considered convicted of a crime of domestic violence if the applicant has had his or her "civil rights restored." 18 U.S.C. § 921(a)(33)(B)(ii) (2012). Therefore, in order for granting relief under the FOID Card Act to not be contrary to federal law, the applicant must have *already* had his or her "civil rights restored." See 430 ILCS 65/10(c) (West 2014); 18 U.S.C. §§ 922(g)(9), 921(a)(33)(B)(ii) (2012). Stated another way, restoration of the applicant's civil rights is a condition precedent to the finding that granting relief would not be contrary to federal law. Thus, it is not viable to state that section 10 of the FOID Card Act restores an applicant's civil rights when by the very operation of the statute it is necessary for an applicant to have previously had his civil rights restored before a court may make a finding under section 10.

¶ 26   Illinois law does not provide a way to restore gun rights. As stated above, in order for petitioner's civil rights to be restored, Illinois law would have to allow for the restoration of such a right. *Supra* ¶ 24. The only provision we find in Illinois law that allows for the restoration of a civil right is the Illinois Constitution's restoration of a prisoner's right to vote upon the completion of his sentence. Ill. Const. 1970, art. III, § 2 ("A person convicted of a

---

[1]The petitioner had been convicted in Massachusetts of a misdemeanor that made him ineligible to possess a firearm under federal law. *DuPont*, 113 A.3d at 241. The Massachusetts Firearm Licensing Review Board restored his ability to possess a firearm. *Id.* He then applied for an armed security guard license in New Hampshire through the New Hampshire Department of Safety, who determined that the petitioner was disqualified from possessing a firearm. *Id.*

felony, or otherwise under sentence in a correctional institution or jail, shall lose the right to vote, which right shall be restored not later than upon completion of his sentence."); *Baumgartner*, 2016 IL App (4th) 150035, ¶ 38. Therefore, even if we were to find that gun rights are civil rights, Illinois does not provide a way to restore such a right.

¶ 27 Petitioner takes issue with the result of the exclusion of gun rights from the rights considered under the civil rights restored provision. Specifically, defendant notes that under Illinois law a person convicted of a crime and sentenced to time in jail loses the right to vote until his sentence is completed. Ill. Const. 1970, art. III, § 2. However, if a petitioner is not sentenced to imprisonment, he does not fall within the purview of this provision as "the words 'civil rights restored' do not cover the case of an offender who lost no civil rights." *Logan*, 552 U.S. at 37. Petitioner states that such a construction "leads to absurd results" as "had [he] actually committed a more serious battery and had been sentence[d] to one day (or more in jail), post-conviction, he would then have had 'civil rights restored' and be eligible for FOID card relief. *** Thus more severe domestic batterers potentially can receive their firearms back, while the most minimal offenders are ineligible."

¶ 28 Petitioner's argument overlooks the rest of section 10 of the FOID Card Act. Petitioner is correct that a person would not be barred from owning a firearm under federal law if he or she committed a more serious battery, spent time in jail, and had his or her civil rights restored upon completion of his or her sentence. However, as stated above (*supra* ¶ 11), petitioner also must show that (1) he or she has not had any other felonies within the last 20 years; (2) the circumstances regarding any convictions, his or her criminal history, and his or her reputation "are such that the applicant will not be likely to act in a manner dangerous to public safety"; and (3) it is not contrary to public interest that he or she possess a FOID card. 430 ILCS 65/10(c)(1)-(3) (West 2014). The "severe domestic batterers" that petitioner speaks of would have a harder time passing these hurdles.

¶ 29 Further, petitioner and other "minimal offenders" are not without remedy. The Gun Control Act additionally provides that a person will not be considered convicted of a crime of domestic violence "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned." 18 U.S.C. § 921(a)(33)(B)(ii) (2012).

¶ 30                                                   C. Other Federal Provisions

¶ 31 In his brief, petitioner mentions in passing the " 'safety valve' provisions" under section 925 of the Gun Control Act (18 U.S.C. § 925 (2012)). However, this provision does not provide any relief to petitioner.

¶ 32 Section 925(c) of the Gun Control Act provided "a 'safety valve' provision under which persons subject to federal firearms disabilities, including persons whose civil rights have not been restored, may apply to the Attorney General for relief from the disabilities." *Logan*, 552 U.S at 28 n.1.

> "Implementation of section 925(c) apparently continued for several years, safeguarding the rights of the reformed and recovered. Then, in 1992, the budget axe fell, and Congress barred the Attorney General/Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) from using appropriated funds ' "to investigate or act upon [relief] applications," ' a bar that was thereafter annually renewed. [Citation.] Though section 925(c) remained on the books, its significance became, at best, aspirational, its

reimplementation prospective." *Coram*, 2013 IL 113867, ¶ 30 (quoting *Logan*, 552 U.S. at 28 n.1, quoting *United States v. Bean*, 537 U.S. 71, 74-75 (2002)).

"[T]he Supreme Court has held that Congress's decision to defund the program stripped the federal courts of jurisdiction to review claims arising under § 925(c)." *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678, 682 (6th Cir. 2016).

¶ 33 In 2008, "Congress authorized federal grants to encourage the states to supply accurate and up-to-date information to federal firearms databases." *Id.* In order to be eligible for the grants, states had to create a "relief-from-disabilities program that allows individuals barred under § 922(g)(4) to apply to have their rights restored." *Id.* However, this only applies to those barred due to adjudication as a mental defective or commitment to a mental institution. As section 925(c) "is currently a nullity" for those barred from owning a firearm by a conviction for a crime of domestic violence, petitioner cannot seek relief under it. *Id.*

¶ 34 Petitioner argues that "it does not make any sense to say that the circuit court granting relief is 'contrary to federal law,' where the Illinois Circuit Courts would be applying the exact same standards the ATF or U.S. Attorneys would be applying if they were funded to do so." If section 925(c) was funded, petitioner could obtain relief from the federal firearms bar, and then granting the FOID card would not be contrary to federal law. However, without that avenue, petitioner is still under the federal firearm disability. The General Assembly clearly meant to tie the state prohibition of a FOID card with the federal prohibition of gun ownership, allowing for the reinstatement of the FOID card only once the federal prohibition had been relieved.

¶ 35                    II. As-Applied Constitutional Challenge

¶ 36 Petitioner next argues that the FOID Card Act and the Gun Control Act are unconstitutional as applied to him as they "now impose a blanket ban on persons convicted of domestic battery *** from possession [of] firearms." We find petitioner's constitutional challenge to be premature. See *Baumgartner*, 2016 IL App (4th) 150035, ¶ 59.

¶ 37 In *Coram*, the majority determined that it did not need to reach the petitioner's constitutional claim as it found relief another way. *Coram*, 2013 IL 113867, ¶ 74. However, the dissent determined that the petitioner's constitutional claim was premature. *Id.* ¶¶ 127, 134-35 (Theis, J., dissenting, joined by Garman, J.). The dissent noted that the court in *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010), "rejected the claim that domestic violence misdemeanants are subject to a permanent ban where a remedy is potentially available to them." *Coram*, 2013 IL 113867, ¶ 132 (Theis, J., dissenting, joined by Garman, J.). In *Skoien*, the petitioner raised a similar argument, contending that a domestic battery misdemeanant in Wisconsin could not have his or her civil rights restored. *Id.* The Seventh Circuit determined that, because Wisconsin provided an opportunity for domestic violence misdemeanants to seek a pardon or expungement, " '§ 922(g)(9) in its normal application does not create a perpetual and unjustified disqualification for a person who no longer is apt to attack other members of the household.' " *Id.* (quoting *Skoien*, 614 F.3d at 645).

¶ 38 Based in part on *Skoien*, the dissent stated:

"In Illinois, the constitution gives the Governor the unfettered authority to 'grant *** pardons, after conviction, for all offenses on such terms as he thinks proper.' Ill. Const. 1970, art. V, § 12. The pardon power is extremely broad. [Citations.] Although a matter of grace, the statutory procedures provide a petitioner with an avenue in which

the executive can consider a wide range of factors, including Coram's relevant history and specific reasons why a pardon should be granted, in his case to remove a specific statutory disability. [Citation.] His petition will be reviewed by the Prisoner Review Board, at which he may request a public hearing and be represented by counsel. [Citation.] If an individual is granted a pardon, the Governor may authorize expungement, allowing the petitioner to seek expungement of his conviction through a court order. [Citation.]

Where Coram has not availed himself of a potential state remedy available to him under the statute, we need not and should not determine whether the statute is an unconstitutional perpetual ban which violates his second amendment rights. A remedy does not become unavailable merely because it is discretionary or resort to it may fail. It is not futile without ever being tried. Thus, where it is yet unknown whether Coram can satisfy section 921(a)(33)(B)(ii), the question of '[w]hether a misdemeanant who has been law abiding for an extended period must be allowed to carry guns again, even if he cannot satisfy § 921(a)(33)(B)(ii), is a question not presented today.' *Skoien*, 614 F.3d at 645." *Id.* ¶¶ 133-34.

¶ 39 Our Fourth District had a similar case. *Baumgartner*, 2016 IL App (4th) 150035, ¶ 59. Though the court found the petitioner's as-applied challenge forfeited, it stated that, had it been inclined to excuse the forfeiture, the *Coram* dissent's "reasoning [was] instructive." *Id.* The court stated, "Like in *Coram*, plaintiff in this case has a potential state remedy available to him, which could result in the removal of his federal firearm disability. Nothing in the record indicates he has attempted to avail himself of that potential remedy. As a result, his constitutional claim is premature." *Id.* ¶ 61.

¶ 40 We agree with the courts in *Skoien* and *Baumgartner* and the dissent in *Coram*. The record does not show that petitioner has ever applied for a pardon. He still has a remedy available to obtain relief. Therefore, consideration of the as-applied challenge is premature.

¶ 41                                                         CONCLUSION
¶ 42 The judgment of the circuit court of Bureau County is affirmed.

¶ 43 Affirmed.