# Illinois Official Reports

## Appellate Court

---

### *Pournaras v. People*, 2018 IL App (3d) 170051

---

| | |
|---|---|
| Appellate Court Caption | KOSTANTINO S. POURNARAS, a/k/a Gus S. Pournaras, Petitioner-Appellant, v. THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee. |
| District & No. | Third District<br>Docket No. 3-17-0051 |
| Filed | November 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 16-MR-184; the Hon. Thomas W. Cunnington, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Patrick M. O'Brien, of Kankakee, for appellant.<br><br>Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, David J. Robinson, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court.<br>Presiding Justice Carter specially concurred, with opinion.<br>Justice Lytton, specially concurred, with opinion. |

¶ 1    Petitioner, Kostantino S. Pournaras, appeals the trial court's denial of his petition to obtain a Firearm Owner's Identification Card (FOID card). Petitioner filed his petition pursuant to the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/10(c) (West 2016)). He asserts the trial court erred in finding he did not meet all of the qualifications required by the FOID Act due to the trial court's erroneous interpretation of the federal Gun Control Act of 1968 (Gun Control Act) (18 U.S.C. § 921 *et seq.* (2012)). He argues he has had his "civil rights restored" within the meaning of the Gun Control Act so as to allow him to regain the privilege of having a FOID card. *Id.* § 921(a)(20). We reverse the judgment of the trial court and remand with instructions.

¶ 2                                     FACTS
¶ 3    In February 2016, petitioner filed a petition to reinstate his privilege to obtain a FOID card. He brought his petition pursuant to the FOID Act, which states in relevant part:

"Any person prohibited from *** acquiring a Firearm Owner's Identification Card under Section 8 of this Act may *** petition the circuit court in the county where the petitioner resides, *** and the Director or court may grant such relief if it is established by the applicant to the court's or Director's satisfaction that:
        ***
        (1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a Firearm Owner's Identification Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;
        (2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;
        (3) granting relief would not be contrary to the public interest; and
        (4) granting relief would not be contrary to federal law." 430 ILCS 65/10(c) (West 2016).

Petitioner conceded he had been convicted of burglary (720 ILCS 5/19-1(a) (West 1994)) in Kankakee County case No. 94-CF-778 and theft (*id.* § 16-1(a)(4)(A)) in Kankakee County case No. 95-CF-128. The Kankakee County trial court sentenced petitioner to probation and time served on these offenses. Petitioner completed his sentence and argued he met the conditions under the FOID Act to have his privileges restored.

¶ 4    The trial court held a hearing on the matter. In December 2016, the trial court entered its decision. The trial court found more than 20 years had passed since petitioner's prior felony convictions and he had no felonies since then. 430 ILCS 65/10(c)(1) (West 2016). It found petitioner was gainfully employed, volunteered as a first responder, and took an active role as a husband and father. Petitioner testified that he was "young, dumb, and stupid" when he committed his felony offenses and had since lived a life free of legal troubles. He wanted a FOID card to recreationally hunt and shoot with friends and family. These facts supported the court's finding petitioner would not be a danger to public safety if his firearm privileges were reinstated. *Id.* § 10(c)(2). These facts also supported the court's finding that granting petitioner

his FOID card privileges would not be against public interest. *Id.* § 10(c)(3). However, the court found petitioner did not meet the final requirement that reinstating petitioner's firearm privileges not be contrary to federal law. *Id.* § 10(c)(4). The court found granting petitioner's request to obtain a FOID card would be against federal law, namely the federal gun control ban on possession of firearms by a convicted felon. 18 U.S.C. § 922(g)(1) (2012). This appeal followed.

¶ 5                                                                    ANALYSIS

¶ 6        On appeal, petitioner's only argument is that he has had his "civil rights" restored within the meaning of the Gun Control Act. Therefore, he has no federal firearm disability, and the trial court erred in denying his petition to obtain a FOID card. Petitioner asserts the trial court erroneously interpreted the federal Gun Control Act. See *id.* §§ 922(g)(1), 921(20). Section 922 provides that it is against federal law for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year *** to *** possess *** any firearm or ammunition." *Id.* § 922(g)(1). Petitioner contends the statute must be read in conjunction with section 921, which provides definitions for section 922. Section 921 sets limitations on a "crime punishable by imprisonment for a term exceeding one year" by stating:

> "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id.* § 921(20).

Petitioner maintains probation takes away some civil rights that are restored upon completion of his sentence.

¶ 7        The State disagrees with petitioner's definition of "civil rights" and believes the trial court correctly dismissed the petition. The State argues the correct question is whether petitioner's gun rights are civil rights. Because gun rights are not civil rights, per the State's interpretation of the phrase "civil rights," petitioner has no right to restore. See *People v. Heitmann*, 2017 IL App (3d) 160527, ¶ 26.

¶ 8        Whether petitioner has had his civil rights restored so as not to be barred from owning a firearm under section 922 of the federal Gun Control Act is an issue of statutory construction. *Baumgartner v. Greene County State's Attorney's Office*, 2016 IL App (4th) 150035, ¶ 35. Issues of statutory construction are questions of law and subject to *de novo* review. *Id.* "The cardinal rule of statutory construction is to give effect to the legislative intent of the enactment." *Rushton v. O'Malley*, 89 Ill. App. 3d 103, 104 (1980). "The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. Statutes should be interpreted to avoid constructions that create doubts as to their validity. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510 (2007). "[T]his court presumes that the legislature did not intend to create absurd, inconvenient, or unjust results." *Coram v. State of Illinois*, 2013 IL 113867 ¶ 57.

¶ 9        The Supreme Court in *Logan v. United States*, 552 U.S. 23, 26 (2007), construed the phrase " 'civil rights restored' " used elsewhere in the Gun Control Act. The Court adopted the holding of other courts that the "civil rights" used in the Gun Control Act are "the rights to vote, hold office, and serve on a jury." *Id.* at 28.

¶ 10    In Illinois, the constitution provides "[a] person convicted of a felony, bribery, perjury or other infamous crime shall be ineligible to hold an office created by this Constitution. Eligibility may be restored as provided by law." Ill. Const. 1970, art. XIII, § 1. The right to hold office is restored by statute stating "[a] person convicted of a felony shall be ineligible to hold an office created by the Constitution of this State until the completion of his sentence." 730 ILCS 5/5-5-5(b) (West 2016). Illinois law requires members of a jury to be "[f]ree from all legal exception." 705 ILCS 305/2(a)(3) (West 2016). Plaintiff contends he could not exercise these civil rights while on probation, which we will address in turn.

¶ 11    The State relies on the holding in *Heitmann*, but the case here is distinguishable. The petitioner in *Heitmann* sought to obtain a concealed carry permit but was convicted of domestic violence. *Heitmann*, 2017 IL App (3d) 160527, ¶ 3. The Gun Control Act treats domestic violence convictions differently than "crimes punishable by imprisonment for a term exceeding one year." See 18 U.S.C. § 922(g)(1) (2012). In the definitions of section 921, the act, in relevant part, states:

> "A person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (*if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense*) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." (Emphasis added.) *Id.* § 921(a)(33)(B)(ii).

The applicable definition provides language not present in the definition for "crimes punishable by imprisonment for a term exceeding one year," which we cannot ignore. See *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617 ¶ 26 ("Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous.").

¶ 12    Additionally, the trial court in *Heitmann* sentenced the petitioner to time served and ordered him to pay a fine. *Heitmann*, 2017 IL App (3d) 160527 ¶ 3. The petitioner faced no sentence postconviction. Because the proper inquiry is the status of a petitioner's rights postconviction and the petitioner never faced a sentence that took away any of his civil rights, he could not be said to have had those rights restored. *Id.* ¶ 27.

¶ 13    Here, petitioner is not subject to the additional statutory language applied to domestic violence offenders. Additionally, petitioner faced a sentence of probation postconviction.

¶ 14    Petitioner argues he could not have held office while serving his probation. The Illinois Constitution provides "[a] person convicted of a felony, bribery, perjury or other infamous crime shall be ineligible to hold an office created by this Constitution. Eligibility may be restored as provided by law." Ill. Const. 1970, art. XIII, § 1. That right is automatically reinstated upon operation of a statute that says "[a] person convicted of a felony shall be ineligible to hold an office created by the Constitution of this State until the completion of his sentence." 730 ILCS 5/5-5-5(b) (West 2016).

> "A person convicted of a felony is ineligible to hold an office created by the Constitution of the State of Illinois until the completion of his sentence. ***
>
> On completion of sentence of imprisonment or upon discharge from probation, conditional discharge, or periodic imprisonment, or at any time thereafter, all license

rights and privileges granted under the authority of Illinois which have been revoked or suspended because of conviction of an offense must be restored \*\*\*." 15 Ill. L. and Prac., *Criminal Law*, § 1079 (2014).

The Seventh Circuit interpreted the Illinois statute in the same way, finding the right to hold office would be automatically restored upon completion of the defendant's sentence. *United States v. Gillaum*, 372 F.3d 848, 861 (7th Cir. 2004). Because petitioner would not have been able to hold office while on probation and that right was automatically restored upon successful completion of his sentence, this is a civil right restored within the meaning of the Gun Control Act. See *Logan*, 552 U.S. at 28.

¶ 15 Petitioner also argues that, because Illinois requires a person serving on a jury to be "[f]ree from all legal exception," this means he would have been ineligible to serve on a jury while on probation. See 705 ILCS 305/2(3) (West 2016). Petitioner was under sentence until he completed his probation and thus was not free from all legal exception. His completion of probation removed his obstacle to serving on a jury, thus restoring his civil right. *Logan*, 552 U.S. at 28, 36.

¶ 16 By virtue of completing his sentence, petitioner had his civil rights restored within the meaning of the Gun Control Act. *Id.* Therefore, petitioner utilized an exception to remove himself from disqualification under federal law. Under a proper reading of the Gun Control Act, we hold petitioner should be allowed to obtain a FOID card because we find he has met all of the statutory requirements. See 430 ILCS 65/10(c) (West 2014).

¶ 17 This result also avoids an absurd application of the law. See *Coram*, 2013 IL 113867, ¶ 57 ("In the construction of our statutes, this court presumes that the legislature did not intend to create absurd, inconvenient, or unjust results."). To find petitioner never had his civil rights removed so as to prevent them from being restored would disproportionately punish a less serious offender. The State's argument is that if petitioner's crimes were of a sufficient magnitude, to require, say, a sentence of five years' imprisonment, there would be no question whether his civil rights were restored. The proposition fails on its face because a sentence of probation is no less of a sentence or legal obstacle than incarceration, at least with respect to holding office or sitting on a jury.

¶ 18 Assuming no intervening disqualifying events and in light of the trial court's other findings, we remand with directions for the trial court to direct the Department of the Illinois State Police to issue petitioner a FOID card.

¶ 19                                                      CONCLUSION
¶ 20 For the foregoing reasons, we reverse the judgment of the circuit court of Kankakee County and remand with directions.

¶ 21 Reversed and remanded with directions.

¶ 22 PRESIDING JUSTICE CARTER, specially concurring:
¶ 23 Although I concur in the majority decision of the court, I write separately to explain why my concurrence in this case does not conflict with the decision in *Heitmann*, 2017 IL App (3d) 160527. Simply put, there is nothing in the court's decision in the instant case that is contrary to this court's decision in *Heitmann*. In *Heitmann*, one of the findings that we made was that

gun rights were not the type of civil rights that were contemplated in the Gun Control Act's restoration of civil rights exemption. See *id.* ¶ 21. The decision in the instant case remains true to that finding. The Gun Control Act makes it unlawful for a person who has been convicted in any court of a misdemeanor crime of domestic violence to possess a firearm. 18 U.S.C. § 922(g)(9) (2012). In the present case, the petitioner, unlike the applicant in *Heitmann* (see *Heitmann*, 2017 IL App (3d) 160527, ¶ 3), was not previously convicted of a crime of domestic violence. Thus, the facts in the instant case are in no way comparable to the facts of *Heitmann* and dictate that a different result be reached. The petitioner in the instant case lost some of his relevant civil rights and then had those rights restored. The *Heitmann* applicant did not lose any of his relevant civil rights as a result of his domestic violence sentence and did not, therefore, have any of his relevant civil rights restored. See *id.* ¶¶ 16-29. For the reasons stated, I respectfully specially concur with the majority's decision.

¶ 24   JUSTICE LYTTON, specially concurring:
¶ 25   I join in Presiding Justice Carter's special concurrence.