2020 IL App (3d) 180409

Opinion filed April 30, 2020
Modified Opinion Upon Denial of Rehearing filed June 8, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THOMAS BROWN, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| | ) | Putnam County, Illinois. |
| Petitioner-Appellee, | ) | |
| | ) | |
| | ) | |
| | ) | Appeal No. 3-18-0409 |
| v. | ) | Circuit No. 16-MR-13 |
| | ) | |
| | ) | |
| THE ILLINOIS STATE POLICE, | ) | |
| | ) | |
| Respondent-Appellant. | ) | The Honorable |
| | ) | Stephen A. Kouri, |
| | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice Lytton concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

_____

**OPINION**

¶ 1            Petitioner, Thomas Brown, filed a petition in the trial court seeking relief from a decision

of the Illinois State Police (ISP) revoking his Firearm Owners Identification (FOID) Card. After

an evidentiary hearing, the trial court granted the petition and directed the ISP to issue Brown a

FOID card. The ISP appeals. We reverse the trial court's judgment.

## I. BACKGROUND

In September 2001, Brown pled guilty to, and was convicted of, the misdemeanor offense of inflicting corporal injury on a spouse in California. He was sentenced to three years of probation and was required to pay a fine and to attend anger management counseling. The conviction stemmed from an incident where Brown had gotten into an argument with his then-wife, Suzie Brown; picked her up; and dropped her or let her fall over his back, causing her to get a "road rash." Brown and Suzie were later divorced in 2007 but remained on friendly terms.

For several years after the 2001 California conviction, Brown held a FOID card and owned and possessed firearms in Illinois, apparently without incident. In January 2013, Brown filed an application to renew his FOID card. When Brown was asked on the renewal application whether he had ever been convicted of domestic battery or a substantially similar offense (misdemeanor or felony), he checked "no." Brown's FOID card was later renewed.

At some point prior to or during July 2016, Brown tried to purchase a gun from a federally licensed firearms dealer. The ISP ran a background check on Brown for the purchase and learned of Brown's 2001 California conviction, which the ISP classified as being an "aggravated domestic battery[ ] or a substantially similar offense in another jurisdiction." The ISP revoked Brown's FOID card based upon that conviction and, in July 2016, sent Brown a letter notifying him of the revocation and directing him to turn over any guns in his possession to the police. See 430 ILCS 65/8(l) (West 2016) (authorizing the ISP to revoke a person's FOID card if the person has previously been convicted of a domestic battery, aggravated domestic battery, or a substantially similar offense in another jurisdiction). Brown complied. All of the guns that Brown turned over were manufactured outside the state of Illinois.

¶ 6    In August 2016, the month after Brown had received the revocation notice, he filed a petition in the trial court under section 10 of the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/10 (West 2016)) seeking relief from the ISP's decision revoking his FOID card. Among other things, Brown alleged in the petition that he was qualified under Illinois law to hold a FOID card, that issuing him a FOID card would not be contrary to federal law, and that certain portions of the FOID Act and of the federal Gun Control Act of 1968 (FGCA) (18 U.S.C. § 922(g)(9) (2012)) were unconstitutional as applied to him. The ISP opposed Brown's petition.

¶ 7    In April 2018, an evidentiary hearing was held on the petition. During the hearing, the parties presented the testimony of three witnesses and numerous pieces of documentary evidence, most of which were admitted into evidence by stipulation. In addition to establishing many of the facts set forth above, the evidence presented at the hearing can be summarized as follows.

¶ 8    Brown testified that he was 51 years old, worked as a truck driver, and lived in Putnam County. He had been working for the same employer for the past 14 years and was licensed to manage and transport hazardous materials. Brown had never been convicted of a felony but had been convicted of the domestic offense in California, which he referred to in his testimony as a domestic battery.

¶ 9    At the time of the September 2001 offense, Brown and his then-wife, Suzie, were driving a truck together as a team. A load that Brown and Suzie were supposed to pick up got canceled, and Brown and Suzie had to get a motel room in California. They had a few drinks at the bar and got into a little bit of an argument. Brown picked up Suzie and was carrying her in what he described as a "playful moment," and Suzie fell off of or down Brown's back and onto the ground causing Suzie to get a little bit of a "road rash" on her arm. The police were apparently

3

called by someone, and they arrested Brown for battery. Brown sat in jail for three days waiting for his case to go before the court. Brown pled guilty to the offense because otherwise it would have cost him $5000 to bail out of jail so that he could fight the case and he was advised by the company that he worked for at the time to take the plea bargain. Brown's understanding of the plea agreement was that he was to be given court supervision and three years of probation. Brown later learned that he did not receive court supervision and that he was given a conviction instead. As a result of the plea, Brown also paid a fine of approximately $500 and performed community service work and anger management counseling but was not required to serve any postjudgment jail time. Brown did not remember being advised at the time of the plea that a guilty plea would affect his gun rights in any way. According to Brown, he did not intend to hurt Suzie when the incident happened and, to the best of his knowledge, Suzie was not hurt as a result of the incident, other than her road rash. Suzie did not seek medical treatment and did not call the police. There were no other incidents of domestic violence between Brown and Suzie during their relationship. A letter from Suzie was admitted into evidence during the hearing, which gave a similar account of what had occurred during the 2001 California incident and stated Suzie's opinion that Brown was not likely to act in a manner dangerous to public safety if his FOID card was reinstated and that reinstating Brown's FOID card would not be contrary to the public interest.

¶ 10        As for his other criminal encounters, Brown stated that he was placed on court supervision in 2005 for a driving under the influence charge in Bureau County and that he successfully completed the period of supervision. Brown was also charged in 2005 with battery for a bar fight he had gotten into in LaSalle County. Brown stated on the witness stand, however, that he was merely defending himself during that incident and that the charge was later dropped.

4

Brown also had a conviction in 1988 in Minnesota when he was a minor for assault in the fifth degree. A letter from the Bureau County sheriff was admitted into evidence during the hearing, which indicated that Brown had lived in Bureau County for the past seven years without incident.

¶ 11     With regard to his fitness to possess a firearm, Brown testified that he had held a FOID card for about 20 or 25 years and that he had owned firearms since he was about 16 years old. Brown had used firearms in the past for hunting and for target practice and had never used a firearm in a dangerous manner to himself or to others. Brown stated on his FOID card renewal application that he had never been convicted of domestic battery because he thought that he had received court supervision on the California offense, not because he was trying to deny that something had happened. Brown wanted to be able to possess firearms for protection so that he could teach his current wife, who was a FOID card holder, how to use weapons and for hunting purposes. Brown learned that there was a problem with his FOID card when he went to purchase another gun and his purchase was denied. When Brown's FOID card was revoked, he turned all of his and his wife's firearms over to the sheriff's department. Brown's wife later took possession of the firearms with court permission and now kept those firearms in her and Brown's home.

¶ 12     Brown had never tried to have his California domestic violence conviction vacated or expunged and had never applied for a governor's pardon for the California offense. Other than filing this lawsuit, Brown had done nothing else to try to get his California conviction removed from his record.

¶ 13     Brown's current wife, Kari Brown, testified at the hearing in support of Brown's petition. Kari stated that she and Brown had been married since 2010. Before Brown's FOID card was

5

revoked, he participated in target practice with Kari and taught her how to clean a firearm. Kari had always known Brown to be careful with firearms and had no reason to believe that Brown would act contrary to the public interest if he was granted a FOID card or that he would be a danger to public safety.

¶ 14   Lieutenant Jennifer Radosevic testified at the petition hearing on behalf of the ISP and stated that she was the assistant bureau chief in the ISP's Firearms Services Bureau. Radosevic described the FOID card process in general and the role of the Firearms Services Bureau in the FOID card process and in the firearm purchase process. According to Radosevic, the ISP revoked Brown's FOID card because of a federal and state firearm prohibitor—Brown's September 2001 California conviction of inflicting corporal injury on a spouse. When Radosevic was asked about Brown's reply on his FOID card renewal application that he had never been convicted of a domestic battery or similar offense, Radosevic stated that Brown's answer to that question was clearly incorrect. Radosevic noted that a person could have his FOID card application denied or his FOID card revoked for providing false information on a FOID card application and could also be charged with perjury. During Radosevic's testimony, a copy of Brown's FOID card renewal application and certain other ISP records were admitted into evidence as business records of the ISP.

¶ 15   After all of the evidence had been presented, the trial court took the case under advisement and gave the parties time to file written closing arguments. The following month, in May 2018, after the written closing arguments had been submitted, the trial court issued a one-page written ruling granting Brown's petition. In the ruling, the trial court stated that it was granting the petition based upon the "unique circumstances presented herein, including the fact that guns [were] lawfully in the home of [Brown], with the approval of the State." The trial court

noted in its ruling that the " 'conviction' entered years ago in the [California] domestic battery case [had] been disputed by the alleged victim." As part of its ruling, the trial court directed the ISP to issue Brown a FOID card. The ISP appealed.

¶ 16                                    II. ANALYSIS

¶ 17         On appeal, the ISP argues that the trial court erred in granting Brown's section 10 petition and in directing the ISP to issue Brown a FOID card. In support of that argument, the ISP asserts first that the trial court did not have the authority to grant Brown section 10 relief because doing so was contrary to federal law since Brown was prohibited from possessing a firearm under federal law and did not qualify for an exception to the federal firearm prohibition. Second, and in the alternative, the ISP asserts that trial court should not have granted Brown section 10 relief because the manifest weight of the evidence presented at the hearing showed that Brown was likely to act in a manner dangerous to public safety and that granting Brown relief would be contrary to the public interest. Third, and also in the alternative, the ISP contends that Brown's as-applied constitutional challenge in this case should not be considered by this court because it is premature since Brown has never pursued any of the other available avenues of relief, such as a pardon or expungement. For all of the reasons stated, the ISP asks that we reverse the trial court's judgment.

¶ 18         Brown argues that the trial court's ruling was proper and should be upheld. In support of that argument, Brown asserts first that the trial court correctly granted his petition and correctly directed the ISP to issue him a FOID card because (1) section 10(c)(4) of the FOID Act and section 922(g)(9) of the FGCA are unconstitutional as applied to him; (2) he was not required under the law to pursue a pardon or other administrative remedy before bringing his as-applied constitutional challenge; and (3) the trial court's decision, which Brown characterizes as a grant

7

of his as-applied constitutional challenge, was supported by ample evidence showing that Brown was not likely to act in a manner dangerous to public safety and that granting Brown's petition would not be contrary to the public interest. Second, and in the alternative, Brown asserts that the trial court correctly granted Brown's petition because Brown was entitled to relief under the FOID Act and because granting Brown relief was not contrary to federal law. In making that assertion, Brown contends that he qualified for an exception to the federal firearm prohibition because the trial court restored Brown's civil rights when it determined in the section 10 proceeding in this case that Brown should be allowed to possess a firearm. Brown recognizes that his contention in that regard has been rejected by the various districts of the Illinois Appellate Court that have ruled upon this issue, including this district (see, *e.g.*, *People v. Heitmann*, 2017 IL App (3d) 160527, ¶¶ 20-22 (rejecting the petitioner's argument on appeal that the trial court granting the petitioner his FOID card constituted civil rights restored for the purpose of the exception under federal law to the firearm prohibition)), but makes the argument, nonetheless, to preserve the issue for any possible subsequent appeals.[1] For all of the reasons set forth, Brown asks, albeit somewhat implicitly, that we affirm the trial court's ruling, granting Brown's petition and directing the ISP to issue Brown a FOID card.

¶ 19    The issue raised in this appeal potentially presents both questions of fact and questions of law. As to the questions of fact, we give deference to the trial court's factual findings, which were made after an evidentiary hearing, and will not reverse those findings unless they are against the manifest weight of the evidence. See *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002).

---

[1] After the appeal in this case was filed and oral arguments were heard, the supreme court issued its decision in *Johnson v. Department of State Police*, 2020 IL 124213. In *Johnson*, the supreme court held that for the purpose of the federal firearms prohibition exception (1) gun rights were civil rights and (2) gun rights restored through a section 10 proceeding constituted civil rights revoked and restored when the prior disqualifying conviction took place in Illinois. See *Johnson*, 2020 IL 124213, ¶ 30.

8

As to the questions of law, however, we apply a *de novo* standard of review. See *O'Neill v. Director of Illinois Department of State Police*, 2015 IL App (3d) 140011, ¶ 21.

¶ 20    Under section 10 of the FOID Act, a person whose FOID card has been revoked because of a prior conviction of domestic battery, aggravated domestic battery, or a substantially similar offense in another jurisdiction may petition the trial court for a hearing on the revocation. 430 ILCS 65/10(a) (West 2016). At the hearing, the trial court must determine whether substantial justice has been done. *Id.* § 10(b). If the trial court finds that substantial justice has not been done, it will direct the ISP to issue a FOID card to the petitioner. *Id.* The trial court may not grant relief, however, unless the petitioner has proven the following four requirements to the trial court's satisfaction: (1) that the petitioner has not been convicted of a forcible felony within 20 years of the petitioner's FOID card application or at least 20 years has passed since the end of any period of imprisonment imposed in relation to such a conviction; (2) that the circumstances regarding a criminal conviction (where applicable), the petitioner's criminal history, and the petitioner's reputation are such that the petitioner is not likely to act in a manner that would be dangerous to public safety; (3) that granting relief would not be contrary to the public interest; and (4) that granting relief would not be contrary to federal law. *Id.* § 10(c). As the fourth requirement indicates and as the statute itself separately notes, the trial court may not grant relief to the petitioner if the petitioner is prohibited from obtaining, possessing, or using a firearm under federal law. *Id.* § 10(b), (c); *Johnson*, 2020 IL 124213, ¶¶ 18-19; *Heitmann*, 2017 IL App (3d) 160527, ¶ 12; *People v. Frederick*, 2015 IL App (2d) 140540, ¶¶ 28, 31-34; *Baumgartner v. Greene County State's Attorney's Office*, 2016 IL App (4th) 150035, ¶¶ 25-30; *Odle v. Department of State Police*, 2015 IL App (5th) 140274, ¶¶ 25-33; see also *Coram v. State of Illinois*, 2013 IL 113867, ¶ 101 (Burke, J., specially concurring, joined by Freeman, J.) (stating

9

in the special concurring opinion that the 2013 amendments to the FOID Act make clear that the trial court no longer has the authority to grant relief under section 10 if the trial court concludes that the applicant would be in violation of federal law if he or she were to possess a firearm); *Coram*, 2013 IL 113867, ¶¶ 123-24 (Theis, J. dissenting, joined by Garman, J.) (making a similar statement in the dissenting opinion).

¶ 21        Under the applicable federal law in this case—the FGCA—a person who has been convicted in any court of a misdemeanor crime of domestic violence is prohibited from possessing a firearm. See 18 U.S.C. § 922(g)(9) (2012) (prohibiting possession "in or affecting commerce"). The FGCA defines a "misdemeanor crime of domestic violence" as an offense that is a misdemeanor under federal, state, or tribal law and that has as an element the use or attempted use of physical force or the threatened use of a deadly weapon committed by a current or former spouse, parent, or guardian of the victim (or other specified relationship to the victim). *Id.* § 921(a)(33)(A). For an offense to qualify as a misdemeanor crime of domestic violence under the FGCA, the existence of a domestic relationship between the offender and the victim does not have to be a required element of the offense. *Heitmann*, 2017 IL App (3d) 160527, ¶ 18. Thus, a conviction of simple battery will constitute a misdemeanor crime of domestic violence under the FGCA if the victim of the offense was the offender's spouse or child. *Id.*

¶ 22        The FGCA provides a limited exception to the federal prohibition on firearm possession for those persons who have been convicted of a misdemeanor crime of domestic violence. See 18 U.S.C. § 921(a)(33)(B)(ii) (2012); *Heitmann*, 2017 IL App (3d) 160527, ¶¶ 19, 25, 29. Pursuant to that exception, a person will not be considered to have been convicted of a misdemeanor crime of domestic violence (for the purpose of the federal firearm prohibition) if the misdemeanor conviction has been expunged or set aside or if the offender has been pardoned or

has had his civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights for such an offense), unless such a pardon, expungement, or restoration of civil rights expressly provides that the offender may not ship, transport, possess, or receive firearms. 18 U.S.C. § 921(a)(33)(B)(ii) (2012); *Heitmann*, 2017 IL App (3d) 160527, ¶¶ 19, 25, 29.

¶ 23    In the present case, after having reviewed the record of the trial court proceedings, we find that the trial court erred when it granted Brown's section 10 petition. The crime of which Brown was convicted in California in 2001 clearly qualifies as a misdemeanor crime of domestic violence. See 18 U.S.C. § 921(a)(33)(A) (2012); *Heitmann*, 2017 IL App (3d) 160527, ¶ 18. It does not appear that Brown disputes that portion of the determination. Therefore, unless the limited exception under the FGCA applies, Brown is prohibited from possessing a firearm under federal law. See 18 U.S.C. § 922(g)(9) (2012); *Heitmann*, 2017 IL App (3d) 160527, ¶¶ 19, 25, 29.

¶ 24    The exception cannot apply in this case, however, because Brown's California conviction was never expunged or set aside, Brown was never pardoned for that conviction, and Brown never had his civil rights revoked and restored in California as a result of that conviction. See 18 U.S.C. § 921(a)(33)(B)(ii) (2012); *Johnson*, 2020 IL 124213, ¶ 26 (recognizing that the law of the convicting jurisdiction controls whether civil rights have been restored); *Heitmann*, 2017 IL App (3d) 160527, ¶¶ 19, 25, 29. Although Brown claims that the trial court granting him relief under the FOID Act constitutes civil rights revoked and restored under the federal statutory exception and our supreme court has recently held that the right to keep and bear arms is a civil right for purposes of that exception, the exception still does not apply to Brown here because

11

Brown has not shown that he had his civil rights revoked and restored in California—the convicting jurisdiction. See *Johnson*, 2020 IL 124213, ¶ 26.[2]

¶ 25 It must be concluded, therefore, that Brown did not qualify for the limited exception under the FGCA (see 18 U.S.C. § 921(a)(33)(B)(ii) (2012); *Heitmann*, 2017 IL App (3d) 160527, ¶¶ 19, 25, 29) and that the trial court erred in granting Brown's section 10 petition. Having so determined, we need not rule upon the ISP's other assertions in support of its position.

¶ 26 In addition, although Brown asks this court to rule upon his as-applied constitutional challenge to section 10(c)(4) of the FOID Act and section 922(g)(9) of the FGCA, this court has already ruled in *Heitmann* that such a challenge is premature where, as here, the petitioner still has other remedies available to him to obtain relief, such as a pardon or expungement. See *Heitmann*, 2017 IL App (3d) 160527, ¶¶ 36, 40.

¶ 27                                            III. CONCLUSION

¶ 28 For the foregoing reasons, we reverse the judgment of the circuit court of Putnam County.

¶ 29 Reversed.

¶ 30 JUSTICE HOLDRIDGE, dissenting.

¶ 31 The majority concludes that, although our supreme court has recently held that the right to keep and bear arms is a civil right for purposes of the limited exception provided under the FGCA (*Johnson*, 2020 IL 124213, ¶ 37; 18 U.S.C. § 921(a)(33)(B)(ii) (2012)), Brown cannot meet this

_____

[2] As noted in the previous footnote, in *Johnson*, the supreme court held, among other things, that gun rights were civil rights for the purpose of the federal firearms prohibition in a case where the prior disqualifying conviction took place in Illinois. See *Johnson*, 2020 IL 124213, ¶ 30. Contrary to the assertion of the dissent in this case, respondent has not shown that California (the convicting jurisdiction) has held that gun rights were civil rights or that the removal and automatic restoration of gun rights alone, and no other rights, satisfied the civil rights restored provision for the purpose of the federal firearms prohibition.

exception because he did not have his gun rights revoked and restored in California. I respectfully disagree with this finding for the following reasons.

¶ 32 On September 22, 2001, Brown was convicted of a misdemeanor in California for inflicting corporal injury to a spouse. See Cal. Penal Code § 273.5(a) (West 2001) (this statute is designated in California as a "wobbler," where a defendant can be charged and punished with either a misdemeanor or a felony). He was sentenced to a period of three years' probation, 78 hours of anger management counseling, and $443 in fines. Brown successfully completed his probation and his anger management counseling and paid his fines.

¶ 33 A conviction for inflicting corporal injury to a spouse subjected Brown to a firearm prohibition, which revoked his eligibility to possess a firearm for 10 years from the date of his conviction, specifically, until September 22, 2011. See Cal. Penal Code § 12021(c)(1) (West 2001) (now codified as Cal. Penal Code § 29805(a) (West 2012)). Thus, after the 10-year revocation period expired, Brown's right to possess a firearm was automatically restored by operation of California law. See *id.* This restoration of Brown's gun rights changed his legal status by means of the state's dispensation of forgiveness and demonstrated that, despite his conviction, he was sufficiently trustworthy to possess a firearm. See *Johnson*, 2020 IL 124213, ¶ 26. As such, it is evident that Brown's gun rights were, in fact, revoked and restored in California.

¶ 34 Therefore, I would find that the trial court's order granting Brown's section 10 petition was not against the manifest weight of the evidence as the record demonstrated (1) that he was not convicted of a forceable felony, (2) neither his criminal history nor his reputation indicated that he would act in a manner dangerous to public safety, (3) granting relief was not contrary to public policy, and (4) granting relief was not contrary to federal law because Brown met the FGCA

13

exception as his gun rights were revoked and restored in California. See 430 ILCS 65/10(c) (West 2016); 18 U.S.C. § 921(a)(33)(B)(ii) (2012).

¶ 35    As a final matter, I note the majority's strenuous reliance on *Heitmann*, 2017 IL App (3d) 160527, ¶ 21 (holding that "gun rights" were not the type of "civil rights" contemplated under the FGCA). Much of that opinion on the issue of restoration of civil rights has been rendered obsolete given our supreme court's recent decision in *Johnson*.

¶ 36    For the foregoing reasons, I would affirm the trial court's judgment.

**No. 3-18-0409**

| | |
|---|---|
| **Cite as:** | *Brown v. Illinois State Police*, 2020 IL App (3d) 180409 |
| **Decision Under Review:** | Appeal from the Circuit Court of Putnam County, No. 16-MR-13; the Hon. Stephen A. Kouri, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Katelin B. Buell, Assistant Attorney General, of counsel), for appellant. |
| **Attorneys for Appellee:** | James R. Angel, of Princeton, for appellee. |